Argued and submitted July 22, 1994, reversed and remanded in part; otherwise
affirmed May 24, 1995

## BANK OF THE WEST,
a corporation,
*Appellant,*

*v.*

## E. C. BURLINGAME,
*Respondent.*

## E. C. BURLINGAME
and Stateline Ranch, Inc.,
an Oregon corporation,
*Counterclaim Plaintiffs - Respondents,*

*v.*

## BANK OF THE WEST,
a corporation,
*Counterclaim Defendant - Appellant.*

## E. C. BURLINGAME
and Stateline Ranch, Inc.,
an Oregon corporation,
*Third-Party Plaintiffs,*

*v.*

## Wes COLLEY
and John Does One Through Five,
*Third-Party Defendants.*

(CV90-1007; CA A79406)

895 P2d 1367

S. Ward Greene argued the cause for appellant. With him on the briefs were Sandra L. Mitchell and Greene & Markley, P.C.

Herbert H. Anderson argued the cause for respondents. With him on the brief were Steven H. Corey, Thomas H. Anderson, Jeffrey M. Batchelor, Robert Lane Carey, Corey, Byler, Rew, Lorenzen & Hojem, and Lane Powell Spears Lubersky.

Before Warren, Presiding Judge, and Edmonds and Landau, Judges.

LANDAU, J.

## LANDAU, J.

Plaintiff Bank of the West (Bank) appeals from judgments granting defendant's motion for summary judgment and awarding defendant attorney fees. Bank contends that the trial court erred in concluding that the satisfaction of a coguarantor's obligation had the effect of extinguishing defendant's liability on the same debt. Bank also contends that the trial court erred in awarding defendant attorney fees based on his counterclaims. We affirm in part and reverse and remand in part.

The facts are not in dispute. Defendant and Darlene Wartenbee (Wartenbee) owned Stateline Ranch, Inc. (Stateline). Bank provided Stateline an operating line of credit. In return, defendant and Wartenbee executed personal guarantees to secure Stateline's present and future obligations to Bank. In May 1985, defendant and Wartenbee renewed their written guaranties and individually promised to repay all obligations that Stateline "owes Bank now or in the future." Defendant's guaranty stated, in part:

"Bank may do any of the following things without Guarantor's permission and without notifying Guarantor and this will not affect Guarantor's promise;

"* * * * *

"(e)   Bank may release [Stateline] or anyone else against whom Bank may have the right to collect [Stateline's] Obligations."

The guaranty also stated that it would be governed by Washington law and provided for attorney fees:

"[Defendant] agrees to pay a reasonable attorneys' fee and all other costs and expenses which Bank may incur in enforcing or defending this agreement, whether or not a lawsuit is started."

Subsequently, Stateline executed and delivered a $168,760.02 promissory note to Bank. Stateline defaulted and Federal Land Bank, a senior lienholder, foreclosed. Stateline filed a Chapter 12 bankruptcy petition, and the foreclosure action was stayed. No judgment was entered against Stateline.

Bank then sued Wartenbee to enforce her personal guaranty of Stateline's promissory note. Bank obtained a judgment against Wartenbee for $168,760.02 and recorded it as a lien against Wartenbee's real property. Soon thereafter, Wartenbee filed a Chapter 11 bankruptcy petition and Bank's efforts to collect on the judgment were stayed.

In 1990, the bankruptcy court authorized a settlement between Bank and Wartenbee. In exchange for deeds to Wartenbee's nonhomestead property, Bank filed a satisfaction in the Walla Walla Superior Court for the State of Washington. That satisfaction stated, in part, that

"the judgment entered * * * against the defendant, Darlene L. Wartenbee, has been fully paid, satisfied and discharged, and the clerk * * * is now authorized and directed to satisfy and discharge said judgment in the manner provided by law."

Bank sold the Wartenbee properties and applied the net proceeds to Stateline's note. Those net proceeds did not cover Stateline's entire debt under the note, and Bank brought this action to recover the deficiency from defendant.

Defendant asserted, as affirmative defenses, that the satisfaction extinguished defendant's obligation under the guaranty, that the guaranty was unenforceable for lack of consideration, and that Bank was estopped from suing defendant because of its fraud, breach of fiduciary duty and other wrongdoing. Defendant also counterclaimed on the following theories: breach of contract, breach of fiduciary duty, bad faith denial of contract and intentional infliction of emotional distress.

Stateline was joined as a counterclaim plaintiff. Stateline asserted counterclaims on some of the same grounds as defendant. It also asserted some claims that defendant did not make, including claims based on fraud, negligent mispresentation, suppression of fact and violations of federal and state racketeering laws.

Bank moved to dismiss the claims and counterclaims that were based on fraud, negligent misrepresentation, breach of fiduciary duty, bad faith denial of contract and intentional infliction of emotional distress. The trial court granted those motions.

Defendant moved for summary judgment. Defendant argued that plaintiff's satisfaction of the judgment against Wartenbee extinguished both Stateline's principal debt and defendant's guaranty. The trial court agreed and granted defendant's motion. Bank, Stateline and defendant then reached a settlement with respect to the counterclaims. Thereafter, judgment was entered in favor of defendant.

Defendant moved for an award of attorney fees, under the provision in the guaranty providing for an award for all costs and expenses incurred in an action to enforce the agreement. Over Bank's objections, the trial court concluded that defendant's fees and costs were "reasonable and necessary." The court then multiplied all but a small portion of the fees by a factor of 1.5, and awarded that sum to defendant.

Bank appeals, assigning error to the trial court's entry of summary judgment in favor of defendant and its award of attorney fees.

■ In its first three assignments of error, Bank argues that the trial court erred in granting defendant's motion for summary judgment. According to Bank, Washington law applies and, under *Fruehauf Trailer Co. of Canada, Ltd. v. Chandler*, 67 Wash 2d 704, 409 P2d 651 (1966), the release of one guarantor does not affect the obligations of other guarantors. Defendant does not contest that Washington law applies. He argues, however, that there is no Washington law on point. Relying on general principles of law concerning the satisfaction of judgments, defendant then argues that, because Bank executed a satisfaction that not only released Wartenbee but also declared the underlying debt "fully paid, satisfied and discharged," Bank cannot proceed against defendant on the same debt.

We accept the parties' agreement that Washington law applies and conclude that it supports the trial court's entry of summary judgment.

In *Fruehauf*, the plaintiff sold truck trailers to Pacific Inland Express (PIX). The defendants executed an agreement to partially guarantee the obligation to pay for the trailers. The guaranty agreement provided, in part, that

"[t]he liability of [the defendants] * * * shall not be affected

by any indulgence, compromise, settlement * * * or by the discharge or release of any obligation of PIX."

67 Wash 2d at 705, 409 P2d at 652. PIX defaulted. The plaintiff repossessed the trailers, but the repossession did not cover the full amount of PIX's obligation. Nevertheless, the plaintiff discharged PIX from its liability on the sale of trailers as having been "fully paid and satisfied" and then sued the defendants for the unpaid balance. The defendants moved for a judgment of dismissal, arguing that, because the debt had been fully discharged, the defendant could not be held liable for any deficiency. The trial court granted the motion.

The Washington Supreme Court reversed. It began by noting that it is

"the general law in the state of Washington * * * that, when the principal debt has been discharged, the guarantor is likewise relieved of liability."

67 Wash 2d at 706, 409 P2d at 653. It then noted that, notwithstanding that general rule, the parties may waive the effect of discharge, and remain liable for an obligation, even when the debt has been discharged. Turning to the terms of the guaranty agreement between the plaintiff and the defendant, the court concluded that the defendant had "[i]n clear and unambiguous terms * * * waived the defense of release or discharge." *Id.* at 709, 409 P2d at 654.

■        Thus, under *Fruehauf*, unless the parties have agreed to waive the effect of discharge, the law relieves a guarantor of liability for a debt that has been discharged. *See also Duke v. Benson*, 134 Wash 495, 498-99, 236 P 77, 78-79 (1925); *Jordan v. Peek*, 103 Wash 94, 99-100, 173 P 726, 728 (1918).

■■        In this case, there is no such waiver. The guaranty agreement contains a provision that

"Bank may release [Stateline] or anyone else against whom Bank may have a right to collect [Stateline's] Obligations * * * [and such action] will not affect [defendant's] promise."

That provision waives only the effect of a *release* and says nothing about the effect of a complete *satisfaction and discharge* of the debt. A release is simply an agreement to

abandon or relinquish a claim against a party. *Boyce v. West*, 71 Wash App 657, 662, 862 P2d 592, 595 (1993). A satisfaction and discharge occurs when there has been full payment on an obligation. *DeNike v. Mowery*, 69 Wash 2d 357, 366, 418 P2d 1010, 1017 (1966). The two are distinct concepts with distinct consequences. *Id. See also* 66 Am Jur 2d, *Release*, § 1 (2d ed 1973 & Supp 1994).

When Wartenbee turned over her property, Bank executed a satisfaction that stated not that Wartenbee was released from further liability, but that the judgment of $168,760.02 — which represented the full amount of Stateline's obligation to Bank — "has been fully paid, satisfied and discharged." Stateline's debt of $168,760.02 having been "fully paid, satisfied and discharged," Bank cannot, under Washington law, sue defendant on the same obligation. The trial court did not, therefore, err in entering summary judgment in favor of defendant.

Bank's next five assignments of error concern the trial court's award of attorney fees to defendant. First, Bank argues that the trial court should not have awarded any attorney fees, because defendant was not a "prevailing party." Defendant argues that Bank failed to preserve that issue. Bank concedes that it did not raise the issue at trial. It also concedes that, under Washington law, unpreserved arguments generally are not considered on appeal. Bank argues that, under Washington law, courts nevertheless have the "inherent authority" to consider unpreserved arguments. Neither party argues that Oregon law applies.

■ We agree with defendant. Under both Washington and Oregon law, unpreserved issues are generally not heard for the first time on appeal. *Jones v. Stebbins*, 122 Wash 2d 471, 479, 860 P2d 1009, 1013 (1993); *Hill v. Mayers*, 104 Or App 629, 632, 802 P2d 694 (1990), *rev den* 311 Or 187 (1991). Assuming that Washington law applies to the issue, the authorities on which Bank relies say only that an appellate court has discretion to raise, on its own, issues not raised by the parties. *See* Wash Rules of Appellate Procedure 12.1(b); *Harris v. Dept. of Labor and Industries*, 120 Wash 2d 461, 468, 843 P2d 1056, 1059 (1993); *Obert v. Environmental Research & Dev.*, 112 Wash 2d 323, 333, 771 P2d 340, 346 (1989). That is not what happened in this case, in which

Bank, not the court, is attempting to address an issue not raised at trial. We do not address whether the trial court erred in concluding that defendant was the prevailing party.

■        Next, Bank argues that the trial court improperly included in its award of attorney fees billings that related to counterclaims asserted by Stateline, not by defendant. Bank asserts two grounds for that argument. First, Bank argues that it is improper to award a party fees for work performed for a different party. Second, Bank argues that, in any event, because Stateline was judicially estopped from asserting any of the counterclaims that it asserted against Bank, the trial court erred in awarding fees for work on those counterclaims.

■        Under Washington law, the amount of an award of attorney fees is discretionary and may be overturned on appeal only in cases of "manifest abuse" of that discretion. *Boeing Co. v. Sierracin Corp.*, 108 Wash 2d 38, 65-66, 738 P2d 665, 682 (1987). As a rule, attorney fees should be awarded only for those services "related to the causes of action which allow for fees." *Id.* at 66, 738 P2d at 683. However, whether services are sufficiently related is a matter for the trial court. *Winans v. W.A.S., Inc.*, 52 Wash App 89, 101, 758 P2d 503, 510 (1988), *aff'd* 112 Wash 2d 529, 772 P2d 1001 (1989). The trial court's determination may be overturned only if it awards fees for services that have "nothing to do" with claims that are the proper subject of an award. *Nordstrom, Inc. v. Tampourlos*, 107 Wash 2d 735, 744, 733 P2d 208, 212 (1987).

In this case, a number of billings submitted by one of defendant's attorneys related solely to the counterclaims that were asserted by Stateline alone. In particular, defendant was billed for services concerning fraud, negligent misrepresentation, suppression of fact and the federal and state racketeering counterclaims, which were not asserted by defendant. However, the predicate acts that provided the bases for those counterclaims consisted of the same fraudulent conduct that formed the basis for defendant's own defenses to the action on the guaranty. Accordingly, we cannot say that the billings for work on the Stateline counterclaims had "nothing to do" with the defenses that were the proper subject of an award of attorney fees.

As for Bank's assertion that, in any event, because Stateline was judicially estopped from asserting its counterclaims, no one may properly recover fees for asserting them, defendant replies that the argument was not asserted at trial and was not, therefore, preserved. Bank does not respond to that assertion. We agree that the argument was not preserved and, therefore, do not address it. The trial court did not err in including in its award of attorney fees, charges for services relating to the Stateline counterclaims.

■ Bank next asserts that the trial court erred in awarding fees for services concerning the defenses and counterclaims that were dismissed and then settled. According to Bank, because defendant was not successful on those matters, they are not the proper subject of an award of attorney fees. Defendant argues that the work on those defenses and counterclaims was interrelated with the work that they did in successfully defending Bank's action on the guaranty and was, therefore, properly the subject of an award of fees.

We again review for an abuse of discretion, reversing the trial court's decision only if we conclude that the unsuccessful defenses and counterclaims had "nothing to do" with matters that are the proper basis for an award. *Nordstrom, Inc.*, 107 Wash 2d at 744, 733 P2d at 212. The fact that billings relate to unsuccessful claims or defenses, by itself, does not mean that they must be excluded from an award. Such fees are to be excluded only if they

"are unreasonable because they are generated by claims that were distinct in all respects from successful claims."

*Schumacher Painting v. First Union Mgt.*, 69 Wash App 693, 701-02, 850 P2d 1361, 1366, *rev den* 122 Wash 2d 1013, 863 P2d 73 (1993).

In this case, defendant asserted as one of its affirmative defenses the claim that Bank was estopped from seeking recovery from defendant, based on Bank's alleged fraud, breach of fiduciary duty, breach of the covenant of good faith and fair dealing and other wrongdoing. Bank does not challenge the appropriateness of awarding fees for work on that defense. Bank's assignment of error relates solely to the trial court's inclusion of time billed on the unsuccessful counterclaims of breach of contract, breach of fiduciary duty, bad

faith denial of contract and intentional infliction of emotional distress. At least as to the counterclaims of breach of contract and breach of fiduciary duty, however, the factual and legal issues are clearly related to defendant's asserted bases for his affirmative defense of estoppel. They are, in fact, identical. Under the circumstances, we cannot say that the trial court abused its discretion when it awarded fees concerning those counterclaims.

Likewise, the trial court did not err in including fees relating to defendant's counterclaims for bad faith denial of contract and intentional infliction of emotional distress. Although there is no precise identity between the two counterclaims and the defenses, there certainly is substantial overlap in factual and legal issues. The claim for intentional infliction of emotional distress, for example, is predicated on Bank's alleged fraud and breach of fiduciary duty. Similarly, the claim for bad faith denial of contract is predicated on Bank's breach of fiduciary duty. Again, we cannot say that the trial court abused its discretion in including in its award fees and expenses incurred concerning those two counterclaims.

Finally, Bank asserts that the trial court erred in applying a multiplier of 1.5 to the award of attorney fees. Bank argues that, under Washington law, there are only two justifications for application of a multiplier — the contingent nature of the representation and the quality of the representation — and neither justification exists in this case. Bank also argues that, under Washington law, application of a multiplier is not allowed in noncivil-rights cases. Defendant argues that, although there is no real contingent fee arrangement in this case, there is evidence that he would have been unable to pay his attorneys had he not prevailed, and that is at least the equivalent of a contingent fee arrangement. Defendant also argues that, in the light of the result obtained, the application of the multiplier is appropriate. Defendant rejects as well Bank's assertion that a multiplier may be applied only in civil-rights cases.

Washington courts generally apply a "lodestar" approach in calculating attorney fees. First, the court determines a lodestar figure by multiplying a reasonable hourly rate by the number of hours reasonably expended on the lawsuit. Second, the lodestar may be adjusted, if appropriate,

to reflect either the contingent nature of the representation or the quality of the representation, provided those factors have not already been factored into the lodestar amount. *Evergreen Intern. v. American Cas. Co.*, 52 Wash App 548, 559-60, 761 P2d 964, 970 (1988). The burden of justifying a departure from the lodestar amount is on the party proposing the multiplier. *Metro. Mortg. & Securities v. Becker*, 64 Wash App 626, 633, 825 P2d 360, 364 (1992).

█ We agree with Bank that the trial court erred in applying a multiplier in awarding fees. First, there is no contingent fee agreement. Defendant was billed by the hour and was liable for the fees billed whether he won or lost. Washington courts consider such an agreement to pay a fixed contract rate to be "inherently incongruous" with a claim of contingency. *Travis v. Wash. Horse Breeders*, 111 Wash 2d 396, 412, 759 P2d 418, 426 (1988). As the Washington Supreme Court held in *Bowers v. Transamerica Title Insurance Company*, 100 Wash 2d 581, 675 P2d 193 (1983), the contingency factor

> "should apply only where there is no fee agreement that assures the attorney of fees regardless of the outcome of the case."

*Id.* at 599, 675 P2d at 204. Contingency, therefore, does not justify the use of a multiplier in this case.

Second, the quality of the work does not justify the trial court's application of a multiplier. Under Washington law,

> "[t]his is an extremely limited basis for adjustment, because in virtually every case the quality of work will be reflected in the reasonable hourly rate."

*Id.* at 599, 675 P2d at 204. Absent a finding that representation was "unusually good" or "exceptional," the use of a multiplier is not considered appropriate. *Travis*, 111 Wash 2d at 411, 759 P2d at 426; *Bowers*, 100 Wash 2d at 599, 675 P2d at 205. In this case, the trial court made no such findings. The trial court, therefore, erred in applying a multiplier, and on remand, it should reduce the attorney fee award accordingly.

Because we conclude that the trial court erred in applying a multiplier on other grounds, we need not determine whether, under Washington law, a multiplier may be applied in noncivil-rights cases.

Award of attorney fees reversed and remanded; otherwise affirmed.