HEMSTREET, *Respondent,*
*v.*
SPEARS, *Appellant.*
(TC 422 822, SC 25282)
579 P2d 229

[ 440 ]

Henry Kane, Beaverton, argued the cause and filed the brief for appellant.

Carlton Hodges, Portland, argued the cause for respondent. On the brief were William E. Hurley and Bernard, Hurley, Hodges & Kneeland, Portland.

Before Denecke, Chief Justice, and Tongue and Linde, Justices, and Thornton, Justice Pro Tempore.

THORNTON, Justice Pro Tempore.

**THORNTON, J.,** Pro Tempore.

This case involves an action for conversion brought by plaintiff to recover $338.28 alleged to have been taken by defendant. A jury awarded plaintiff $338.28 general damages and $400 punitive damages, and defendant appeals making several assignments of error.

## MOTION FOR DIRECTED VERDICT

■ We first consider defendant's contention that the trial court erred in directing a verdict for plaintiff on the issue of conversion. In determining this question we examine the evidence in the light most favorable to the defendant to determine if there was any evidence sufficient to warrant submission of the question to the jury. *See, Turman v. Central Billing Bureau,* 279 Or 443, 445, 568 P2d 1382 (1977); *Archer v. Rogers Construction,* 252 Or 165, 169, 447 P2d 380 (1968).

Plaintiff was the managing partner of International Dunes Company (Dunes) which owns and operates several motels in the Portland metropolitan area.[1] Defendant was employed by Dunes as a motel manager from July 2, 1974, to June 30, 1975. Effective July 1, 1975, ownership of the motel managed by defendant was transferred to a Donn DeBernardi, who was formerly a partner in the Dunes' operation. At that time DeBernardi became defendant's employer, and defendant continued as a manager until he was terminated by DeBernardi on November 10, 1975.

Defendant's employment contracts provided that in addition to a monthly salary, he was to be paid a percentage bonus based upon the net increase in motel revenue for each fiscal year he served as manager. Defendant's first employment contract, signed July 2, 1974, provided for a bonus for the period July 2, 1974, to December 31, 1974, the end of the Dunes' fiscal year. Defendant's second employment contract, signed

---

[1] Dunes assigned its claim for conversion to the plaintiff so that all of the partners would not have to be named in the complaint.

February 1, 1975, provided for a bonus for the fiscal year ending December 31, 1975.

On August 21, 1975, defendant wrote to plaintiff requesting payment of one week's accrued vacation pay and bonuses for the time period January 1, 1975, to June 30, 1975. A meeting was held in late August or early September wherein plaintiff in the presence of DeBernardi told defendant that bonuses were calculated only at the end of the fiscal year, and that when the bonuses had been computed Dunes would pay five-twelfths and DeBernardi would pay seven-twelfths of any amount due to defendant.

Subsequent to this meeting a settlement was worked out on September 29, 1975, whereby DeBernardi would pay defendant an increased salary and plaintiff paid defendant $500 in settlement for all bonuses claimed due under the 1975 contract.

On October 8, 1975, defendant wrote three checks payable to cash closing out three Dunes' accounts over which he had control for the operation of the motel. They were a managerial payroll account, reservation account and a petty cash account. The payroll account contained funds out of which the motel manager paid his own and his employes' salaries. The reservation and the petty cash accounts contained, respectively, room deposit fees and money for purchase of miscellaneous supplies. Defendant's authority to write checks on these accounts had not been expressly revoked.[2]

Defendant did not inform the Dunes of the account closures until the bookkeeper for the Dunes inquired of him concerning the accounts approximately three weeks later. Shortly after this inquiry from the Dunes, defendant placed the money in a client's trust account he maintained for his real estate brokerage business.

---

[2]Defendant's authority to write checks on the payroll account was deliberately continued so that he could pay salaries to employes for work done prior to the transfer of ownership of the motel. Defendant wrote no checks on the accounts in either August or September 1975.

[ 442 ]

Until that time the money had apparently been in defendant's personal account.

On the same day that he deposited the money in his trust account, defendant also wrote a letter to plaintiff explaining that the money was being held in a trust account pending satisfactory settlement of defendant's claim for vacation wages and bonus for the month of January 1975. Between the time the checks were written on October 8, 1975, and the November 3, 1975, letter described above, defendant made no demand on plaintiff or the Dunes for any money. On January 16, 1976, after the complaint in this case was filed, defendant deposited the money with the clerk of the court pending the outcome of the instant litigation.

After both sides rested, plaintiff moved for a directed verdict on the issue of conversion which was granted by the trial court. The trial court instructed the jury as follows:

"In this matter, the allegations of plaintiff's complaint insofar as conversion of property by the defendant, those allegations have been proved by the plaintiff and I am instructing you as a matter of law defendant was guilty of a conversion. * * *"

Defendant assigns as error the granting of plaintiff's motion for a directed verdict and the giving of the quoted instruction. Defendant argues that a partial satisfaction of judgment filed by plaintiff and equal to the amount claimed by defendant as unpaid vacation pay constituted an admission that the money converted by defendant was his property. Defendant also claims that the trial court failed to instruct on the disputed issues of fact.

Defendant's contentions cannot be sustained. The partial satisfaction of judgment does not constitute an admission and, in any event, it was not before the jury because it was filed after trial. Defendant also fails to point out what issues of fact with regard to the conversion were disputed. Defendant admitted that the money in the accounts was not his, but was the

property of the Dunes. The evidence was undisputed that defendant took the money for his own use for nearly one month, and placed it in a trust account only after inquiry from the Dunes. The trust account itself was under the total control of the defendant, and it was his stated intent that the money would stay there until his claims were settled.

■ We have stated that a " '[c]onversion is an intentional exercise of dominion or control over a chattel which so seriously interferes with the right of another to control it that the actor may justly be required to pay the other the full value of the chattel.' " *Mustola v. Toddy,* 253 Or 658, 663, 456 P2d 1004 (1969), quoting from Restatement (second) of Torts, § 222A(1) (1965). Defendant's acts clearly constituted a conversion, and there is no evidence to the contrary. Defendant's position that because the Dunes owed him money he could properly seize the funds without liability is untenable. *McCarthy v. General Electric Co.,* 151 Or 519, 49 P2d 993 (1935).

## DEFENDANT'S COUNTERCLAIMS

Defendant alleged two counterclaims: one for $173 unpaid vacation pay and a January 1975 bonus amounting to $200, plus a civil penalty under ORS 652.150;[3] and the second for $1,950 unpaid wages under his 1975 contract plus a civil penalty. On motion of the plaintiff the trial court removed the second counterclaim from the consideration of the jury. As to the first counterclaim, the trial court withdrew the claim for bonus pay from the jury and a special interrogatory approved by defendant was submitted to

---

[3] ORS 652.150 provides:

"If an employer wilfully fails to pay any wages or compensation of any employe who is discharged or who quits his employment, as provided in ORS 652.140, then, as a penalty for such nonpayment, the wages or compensation of such employe shall continue from the due date thereof at the same rate until paid or until action therefor is commenced; provided, that in no case shall such wages or compensation continue for more than 30 days; and provided further, the employer may avoid liability for the penalty by showing his financial inability to pay the wages or compensation at the time they accrued."

the jury asking whether plaintiff wilfully withheld defendant's vacation pay. The jury answered this interrogatory in the negative.

No jury instruction was given as to vacation pay and no place was provided on the verdict form for an award of damages to the defendant. Defendant assigns as error the removal of these counterclaims from the jury's consideration and the failure of the trial judge to give defendant's requested instruction on the counterclaims or submit defendant's verdict form to the jury.

■ The trial court properly excluded defendant's second counterclaim from the consideration of the jury. The amounts claimed therein related to an alleged breach of contract by DeBernardi and not plaintiff. Defendant's reference to testimony by plaintiff that the Dunes' contract was still in effect after the transfer of the motel to DeBernardi does not support his position that plaintiff owed defendant money under his employment contract with DeBernardi. Plaintiff's testimony merely indicates that defendant was entitled, under the contract in effect at the time of the ownership change, to the payment of a year-end bonus, but not salary, by plaintiff.[4] This payment was ultimately worked out in the September 29, 1975, settlement. There was no evidence at trial that plaintiff was liable for any alleged wrongful termination by DeBernardi, defendant's subsequent employer.

■ Defendant's claim that the court committed error by failing to submit his first counterclaim for unpaid vacation pay to the jury is rendered moot by the partial satisfaction of judgment in the amount of $173 filed by the plaintiff subsequent to the trial of the case. *See Gorger v. Gorger,* 276 Or 267, 285, 555 P2d 1 (1976); *Watson v. Georgia-Pacific Corp.,* 5 Or App 353, 361, 478 P2d 431, 484 P2d 1115 (1971).

[4]Defendant admitted in his own testimony that subseqent to June 30, 1975, the date of the change in motel ownership, he was employed by DeBernardi and not Dunes.

■ As to defendant's claim that the court should have submitted the issue of a civil penalty for wilful failure to pay vacation wages, suffice it to say that the defendant agreed with the form of the trial court's special interrogatory asking the jury whether plaintiff wilfully withheld vacation pay from defendant. The court did not err in submitting a verdict form to the jury without a place for the jury to assess a civil penalty against the plaintiff. As a matter of law, the civil penalty would have been the maximum permitted by ORS 652.150 and the trial court so indicated. The only issue for the jury was the wilfulness of plaintiff's conduct which was submitted to the jury without objection from the defendant.

■ Defendant's claim for a $200 bonus for January 1975 was not submitted to the jury. Defendant claims this amount was due under the 1974 contract. However, the 1974 contract specifically provided that any bonus was payable only on revenues generated during the fiscal year ending December 31, 1974. Therefore, the claim for the $200 bonus under the 1974 contract was properly removed from the jury's consideration.[5]

### NEW EVIDENCE

■ In support of his motion for a new trial defendant claimed that the partial satisfaction of judgment constituted an admission by Dunes that it owed defendant for unpaid vacation pay, and was therefore new evidence requiring a new trial. We cannot agree. In a memorandum filed with the satisfaction, plaintiff denied liability for the pay but paid the wages to resolve the issue. The partial satisfaction of judgment in this instance is somewhat analogous to a settlement offer which is not admissible as an admission. *See, Sims v. Sowle,* 238 Or 329, 335, 395 P2d 133 (1964).

---

[5] If the January 1975 bonus was due under the 1975 contract, it was settled by the payment of the $500 pursuant to the September 29, 1975, settlement agreement.

## PUNITIVE DAMAGES

Defendant argues that plaintiff's allegation of punitive damages should have been stricken because: (1) this is a contract dispute; (2) defendant acted in good faith;[6] and (3) there was no evidence that defendant acted with wanton or reckless disregard of plaintiff's rights. There is no merit to defendant's argument. Plaintiff's conversion action had nothing to do with the law of contract and thereby could properly support a claim for punitive damages. *Lee v. Wood Products Credit Union,* 275 Or 445, 551 P2d 446 (1976); *Lewis v. Devils Lake Rock Crushing Co.,* 274 Or 293, 545 P2d 1374 (1976). Defendant's other two contentions were fact questions for the jury, and we conclude that there was sufficient evidence for the jury to find that defendant acted in deliberate disregard of plaintiff's rights.[7] *See, Chamberlain v. Jim Fisher Motors, Inc.,* 282 Or 229, 578 P2d 1225 (1978).

## ATTORNEY'S FEES

Defendant also assigns as error the trial court's failure to award attorney's fees under ORS 652.200(2)[8]

---

[6]Defendant claims that the trial court did not instruct the jury that good faith was a defense to a claim for punitive damages. The trial court specifically instructed the jury on good faith, quoting verbatim from defendant's requested jury instruction.

[7]The trial court instructed the jury that wanton misconduct sufficient to support an award of punitive damages is conduct "amounting to a deliberate disregard of the rights of others or reckless indifference to such rights." Defendant did not except to this instruction or challenge the standard applied on appeal, but instead claimed the evidence was insufficient under the trial court's definition of wanton misconduct. We therefore do not reach the question of whether the instruction was erroneous under *Chamberlain v. Jim Fisher Motors, Inc.,* 282 Or 229, 578 P2d 1225 (1978).

[8]ORS 652.200(2) provides:

"In any action for the collection of wages, if it is shown that the wages were not paid for a period of 48 hours, excluding Saturdays, Sundays and holidays, after the same became due and payable, the court shall upon entering judgment for the plaintiff, include in such judgment, in addition to the costs and disbursements otherwise prescribed by statute, a reasonable sum for attorney's fees for prosecuting said action, unless it appears that the employe has wilfully violated his contract of employment."

[ 447 ]

after plaintiff filed his partial satisfaction of judgment. Apparently defendant is arguing that the partial satisfaction constituted an entry of judgment in favor of defendant on his counterclaim. This is not the case. ORS 652.200(2) requires an entry of judgment in the claiming party's favor. No judgment for defendant was entered here, and such a judgment was not required to be entered here.

Moreover, as already mentioned, the partial satisfaction of judgment is not an admission of liability on the plaintiff's part. In fact, plaintiff specifically denied such liability.

Affirmed.