Argued and submitted November 8, 1979,
reversed and remanded January 22, 1980

CITY OF ROGUE RIVER,
*Appellant/Respondent,*
*v.*
DeBOER, et al,
*Respondents,*
INSURANCE COMPANY OF NORTH AMERICA,
*Respondent/Petitioner.*

(No. 76-2781-L-2, CA 11337, SC 26402)

605 P2d 697

Hugh B. Collins, Medford, argued the cause for
respondent/petitioner Insurance Company of North

America. With him on the brief was Collins, Velure & Heysell, Medford.

William G. Purdy, Medford, argued the cause for appellant/respondent. With him on the briefs was Frohnmayer, Deatherage, Foster & Purdy, Medford.

No appearance for respondents Wayne DeBoer and Roy L. Carlton.

Before Denecke, Chief Justice, and Holman, Tongue, Howell, Lent, and Peterson, Justices.

PETERSON, J.

## PETERSON, J.

This is an action by a supplier of granite to recover $3,300 for granite supplied to the City of Rogue River sewer construction project. [1] The plaintiff brought this action against the contractor (a partnership doing business as R&W Construction Company (R&W)) and against its surety, Insurance Company of North America (INA). Plaintiff sought to recover the contract price of the crushed granite or its reasonable value from R&W and INA. He alleged that INA was liable either on its bond or because it assumed the contract and became the general contractor on the project.

After the presentation of all of the evidence, INA moved for a directed verdict. INA argued that there was no evidence that it requested or agreed to pay for anything supplied by plaintiff, and that it was not liable on its bond because the evidence failed to show that R&W requested or agreed to pay for any granite. INA also argued that even if R&W had requested or agreed to pay for the materials, the bond penalty had been exhausted, and that it was not liable on the bond beyond the bond penalty of $424,812. [2] Defendant R&W also moved for a directed verdict.

The trial court granted both motions for directed verdict. The plaintiff then appealed, assigning as error the granting of the motions for directed verdict and the refusal of the trial court to admit into evidence the minutes of a City Council meeting at which INA's attorney explained INA's position with respect to R&W's problems on the sewer project. The Court of Appeals reversed in a per curiam opinion, [3] citing *Copeland Sand v. Ins. Co. of N. Amer.,* 40 Or App 831, 596

---

[1] In a related case, involving another supplier, we reviewed a judgment in favor of defendant Insurance Company of North America. *Copeland Sand v. Ins. Co. of N. Amer.* 288 Or 325, 607 P2d 718, (1980).

[2] In view of our resolution of this case on other grounds, we express no opinion on the question of INA's liability on the bond.

[3] 40 Or App 733, 595 P2d 1388 (1979).

[487]

P2d 623 (1979). Only INA petitioned this court for review. We reverse and remand for a new trial.

We review the evidence in the light most favorable to the party against whom the motion for a directed verdict was granted. *Hemstreet v. Spears,* 282 Or 439, 441, 579 P2d 229 (1978); *Foster v. Schnell Refrigeration Co.,* 280 Or 411, 414, 571 P2d 497 (1977). The verdict was properly directed in this case only if there was no evidence that INA requested or agreed to pay for the granite or if there was no conflict in the testimony and it was capable of only one construction. *Brown v. Johnston,* 258 Or 284, 285-286, 482 P2d 712 (1971); *Archer v. Rogers Construction,* 252 Or 165, 169, 447 P2d 380 (1968); *Young v. Crown Zellerbach,* 244 Or 251, 259, 417 P2d 394 (1966).

The first issue before this court is whether there is any evidence that INA requested or agreed to pay for materials delivered by the plaintiff.

INA stipulated that plaintiff delivered granite to the project having a reasonable value of $3,300 between November 9 and November 26, 1974. There was also evidence that a bill for that amount was sent by the plaintiff to R&W in care of INA, the bonding company. A partner in R&W, Wayne DeBoer, "okayed" the amount of the bill for the granite. INA did not pay this bill, although it paid other bills received at about the same time.

DeBoer's approval of the bill could be construed to constitute an admission that the materials were ordered, were received, and that they were used on the project. The question then becomes:  Is there any evidence that the admission of DeBoer is binding on INA?  We believe that there was evidence from which a jury could find that DeBoer's admission could be

[488]

attributed to INA.[4] That evidence, set out in the light most favorable to the plaintiff, is as follows:

R&W Construction Company contracted with the City of Rogue River in 1973 to construct a sewer system. INA was the surety on a performance and payment bond for R&W. On June 13, 1974, R&W sent a letter to INA which gave notice of "impending voluntary default upon the * * * contract" and requested INA's intervention. INA notified the City of R&W's problems and requested the City to stop paying R&W and begin making progress payments to INA. R&W assigned to INA its right to receive the contract payments from the City. INA then hired another construction company, Tru-Mix Construction Company (Tru-Mix) to "* * * provide supervision and administration for Bonding Company [INA] in the completion of [the] contract * * *." In the recitals of the contract, it was stated that "As a result of certain differences between the City of Rogue River and R&W Construction Co., Bonding Company is undertaking to complete said contract on behalf of R&W Construction Co." Tru-Mix was given authority to "* * * hire *on behalf of Bonding Company* as surety for R&W Construction Co. such labor and other personnel, as in the judgment of Tru-Mix, shall be required in the completion of said contract, and shall have the right to discharge any personnel employed on the job." (Emphasis added.) Tru-Mix was also given authority to purchase materials and

---

[4] *Hansen v. Oregon-Wash. R. & N. Co.,* 97 Or 190, 218-219, 188 P 963, 191 P 655 (1920), held that an admission of an agent will be allowed in an action against his principal in two cases: "* * * (1) Where the agent is authorized to make an admission, as, for example, an attorney in the course of a trial; and (2) 'where the admission is in the form of a declaration made by an agent, while acting within the scope of his agency, and about the business of his principal, concerning such business.'" In *Top Service Body Shop v. Allstate Ins. Co.,* 283 Or 201, 213-214, 582 P2d 1365 (1978), and *Timber Access Ind. v. U. S. Plywood,* 263 Or 509, 516, 503 P2d 482 (1972), we noted that more recent authorities recognize broader admissibility of admissions by agents. Because the admission of DeBoer falls within the test in *Hansen,* we need not decide whether the broader rule should be adopted.

lease equipment and facilities necessary for the project. Tru-Mix remained in this contractual position until September 1, 1974, when by mutual agreement the contract was terminated. At that time Wayne DeBoer, a partner in R&W, returned and began "actively running" the job.

There is evidence from which the trier of fact could conclude that when DeBoer returned to the project on September 1 he was administering the job for INA in the same manner in which Tru-Mix had contracted previously, and not as a partner in R&W. In a letter to Tru-Mix in which INA agreed to terminate its contract with Tru-Mix, the manager of casualty claims for INA wrote:

> "* * * Mr. Wayne DeBoer indicated a sincere desire to mitigate his own personal loss and that of his firm by getting in and actively overseeing the completion of the sewer project for the City of Rogue River. After sincere deliberation by all concerned, we have decided to let him move back onto the job and devote his entire time to the completion of the project * * *."

The attorney for the City testified that DeBoer "came back to supervise the job." Furthermore, DeBoer's partner in R&W, Roy Carlton, testified that R&W's existence terminated in June, 1974. Carlton testified:

> "Q.  Now, INA is contending, after Tru-Mix left the job, R & W came back and ran the job. Did you come back?
> "A.  I never was back on the job.
> "Q.  Did Mr. DeBoer come back?
> "A.  I think he did, I think he came back and worked for them."

DeBoer signed the payroll checks in conjunction with INA's insurance adjuster. Bills were generally sent to INA in care of R&W, and DeBoer approved the bills of suppliers and subcontractors before they were submitted to INA for payment. DeBoer's approval of the plaintiff's bill was evidence from which a trier of fact could conclude that INA requested and agreed to

[490]

pay for the granite. It follows that because a factual issue existed, it was error for the trial judge to direct a verdict in favor of INA.[5]

The Court of Appeals, without opinion, reversed, citing *Copeland Sand v. Ins. Co. of N. Amer.,* 40 Or App 831, 596 P2d 623 (1979). In *Copeland Sand,* the Court of Appeals held that the plaintiff was entitled to prevail, as a matter of law. Apparently the Court of Appeals intended the same result in this case. Because INA's liability is a factual question, we reverse and remand for a new trial.

The plaintiff also asserts that the trial court erred in refusing to receive minutes of a council meeting of the City of Rogue River into evidence. We believe that the trial court properly rejected such evidence. A verbatim transcript of the same meeting was received in evidence, and the tape from which the transcript was made was in the courtroom. The council minutes contained the City Recorder's "interpretation" as to what was said. The rejected evidence was cumulative, and in view of the fact that the verbatim transcript was received, the plaintiff was not prejudiced. *See also* ORS 41.690.

Reversed with instructions to the Court of Appeals to remand for a new trial.

---

[5] There was also evidence which supports INA's contention that it neither requested nor agreed to pay for the granite, and remained liable only as the surety, if at all. The resolution of the conflicting evidence is for the trier of fact.